**WALT PENNINGTON, SBN 214470**
Pennington Law Firm
3304 30th Street
San Diego, CA 92104-4535
619 940 6157
wpennington@pennfirm.com

*Attorney for Renzulli Properties LLC, and Thomas Renzulli, Movants and Creditors*

# UNITED STATES BANKRUPTCY COURT

# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re | Case No.: 3:25-00667-JBM-11 |
| THE PHAIR COMPANY LLC | Chapter 11 |
|     Debtor and Debtor-in-Possession | (Jointly Administered with Case No. 3:25-00661-JBM) |
| ☒ ALL DEBTORS | JUDGMENT CREDITOR RENZULLI PROPERTIES LLC'S OPPOSITION TO DEBTORS' AMENDED SECOND MOTION TO EXTEND EXCLUSIVITY PERIODS TO FILE A CHAPTER 11 PLAN OF REORGANIZATION AND SOLICIT ACCEPTANCES |
| ☐ THE PHAIR COMPANY LLC, ONLY<br>    Tax I.D. (EIN) #20-4183527 | |
| ☐ JEFFREY DAVID PHAIR, ONLY<br>    S.S. # XXX-XX-4458 | |
| | Date:    December 4, 2025<br>Time:    2:00 p.m.<br>Ctrm:    18<br>Dept:    2<br>Place:    325 W. F Street<br>           San Diego, CA 92101 |

## MEMORANDUM OF POINTS & AUTHORITIES

### FACTS

Debtor The Phair Company LLC ("TPC") showed total assets of $2,723,356. TPC's main asset was 945 E. J St., Chula Vista, California 91910 ("945 E. J St.") TPC valued 945 E. J St. at $2,700,000. DOC 10, p. 10. Without 945 E. J St., TPC's assets total $23,356. DOC 10, p. 10.

This Court granted Renzulli Properties LLC's ("Renzulli") motion to lift the automatic stay to sell 945 E. J St. DOC 121.

The San Diego County Sheriff's office ("Sheriff") called Renzulli's counsel on October 31, 2025 and told him that the Sheriff's office is planning a sale of 945 E. J St. for December 17, 2025. Dec. of W. Pennington ¶ 1.

Debtor Jeffrey David Phair declared his interest in TPC at $3,700,000, even though TPC's total assets were $2,723.356. DOC 10, p. 10; In case 25-00661, DOC 68, p. 4. After the sale of 945 E J. St., Mr. Phair's interest in TPC will be less than $25,000.

Debtor Mr. Phair claimed Bella Mar Land Investors LLC ("Bella Mar") and Green Phair Scripps Partners LLC ("Green Phair") were worth $8,250,000[1] and $9,450,000 respectively. DOC. 187, p. 21:14; In case 25-00661, DOC 68, p. 4. Mr. Phair, as the debtor in possession and manager, allowed Bella Mar and Green Phair to lose their authority under California law to conduct any business. Debtors' motion failed to address the suspension of Bella Mar and Green Phair. DOC 137-1, Exhs. 1 and 4.

The Court appointed an examiner. One of the examiner's duties is to evaluate Debtors' prepetition actions related to use of the proceeds from the sale of 3145 and 3167 Beyer Blvd., San Diego, California ("3145 Beyer.") DOC 211, pp. 6-7. Debtors'

---

[1] Mr. Phair's schedules showed Bella Mar with a value of $11,250,000. In case 25-00661, DOC 12, p. 6.

Page **2** of **10**

Judgment Creditor Renzulli Properties LLC's Opposition to Debtors' Amended Second Motion To Extend Exclusivity Periods To File a Chapter 11 Plan of Reorganization and Solicit Acceptances

motion made no statement concerning the return of the funds distributed to investors. Debtors made no statement concerning the filing of tax returns or reviving the suspended entities.

## ARGUMENT

### THE *DOW CORNING* FACTORS

"In establishing cause, the debtor bears the burden of proof." *In re McLean Industries, Inc.*, 87 B.R. 830, 834 (Bankr. S.D.N.Y. 1987). Debtor listed the non-exclusive factors for determining whether to extend the exclusivity period.

Here, the court ordered joint administration of case. Because the Court lifted the automatic stay for Renzulli Properties LLC to sell 945 E. J St., that Sheriff's sale puts Debtor TPC in a different status from Debtor Mr. Phair.

After the December 17, 2025 Sheriff's sale of 945 E. J St., Debtor TPC will have lost over 99% ($2,700,000 / $2,723,356) of its assets. TPC will have less than $25,000 in assets consisting of personal property. TPC will have no development projects, and there is no reason to extend its exclusive period because TPC has no projects, cash or interests in real property, therefore Debtor TPC has no probability of reorganization success.

Renzulli obtained a judgment against Mr. Phair, TPC and Green Phair based on breach of contract by Mr. Phair, TPC and Green Phair. A judgment was entered for Renzulli against Mr. Phair, TPC and Green Phair.

This Court took judicial notice of the order from the Superior Court of California in case 37-2022-00046736-CU-BC-CTL ("22-46736") where the Superior Court observed "that the breach of contract by The Phair Company LLC relieved the seller, Renzulli Properties LLC, from all further obligations under the contract." DOC 66-2, p. 5:7-9, ¶ 20; DOC 66-8, Exh. 20. Mr. Phair claims that the value of Green Phair is $9,450,000 based on a false claim that there is a contract between Mr. Phair, TPC, and Green Phair and Renzulli. There is no contract between the parties. Renzulli

Because Debtors Mr. Phair and TPC failed to pursue their litigation in the

Judgment Creditor Renzulli Properties LLC's Opposition to Debtors' Amended Second Motion To Extend Exclusivity Periods To File a Chapter 11 Plan of Reorganization and Solicit Acceptances

Superior Court or here to prove that it has a contract, on October 22, 2025, Renzulli filed an adversary proceeding, 25-90015-JBM, for this Court to declare the rights between Renzulli and Mr. Phair, TPC, and Green Phair.

Debtors' motion here, filed after Renzulli's adversary proceeding, did not mention Renzulli's motion or Debtor's plan to prove that Debtor's entities have a contract with Renzulli.

## RENZULLI WILL FILE A MOTION FOR JUDGMENT ON THE PLEADINGS FOR ITS ADVERSARY PROCEEDING

Because this Court has already taken judicial notice of Renzulli's judgment and the Superior Court's November 27, 2024 order,

### 1. The size and complexity of the case

Debtors argued, without evidence that there were multiple development projects. Where are those projects? There is one project: Bella Mar. Mr. Phair and his entities have no contract with Renzulli. The Yaptangcos and the trustees of the Kastlunger Trust filed a motion to declare that there is no contract between them and Mr. Phair's entity. TPC's property at 945 E. J St. will be sold.

On the sole project under development, Bella Mar, Mr. Phair has already declared that the purchasers are not interested in the project without a rezoning that will take years, and at the end of those years, Mr. Phair's interest, if we are to believe his inflated figures is $8,250,000. This $8,250,000 is $3,000,000 less that Mr. Phair's declaration of Bella Mar's value on February 25, 2025. In case 25-00661, DOC 12, p. 6. There is no complexity justifying an extension.

TPC has no projects, no cash and its sole asset will be sold on December 17, 2025. Debtors provided no evidence to show how TPC is complex.

### 2. Necessity of sufficient time to permit the debtor to negotiate a plan of reorganization and prepare adequate information

The record reveals a fundamental deficiency: Debtors have not negotiated with Renzulli, their largest secured creditor. The evidence is stark. Debtors' motion contains

Judgment Creditor Renzulli Properties LLC's Opposition to Debtors' Amended Second Motion To Extend Exclusivity Periods To File a Chapter 11 Plan of Reorganization and Solicit Acceptances

no allegation of negotiations with Renzulli. Debtors produce no correspondence, no term sheets, no meeting notes, no evidence whatsoever of engagement with their principal stakeholder. Debtors reference conversations with small investors, but these creditors are subordinate to Renzulli and cannot be paid unless Renzulli's senior claim is satisfied first.

The lack of a documentary record tells a story. On June 25, 2025, Debtors represented that "Debtors have [been] diligently pursuing reorganization and the structure of a joint plan of reorganization, but the exclusivity period will expire on June 25, 2025." DOC 79, p. 2:14-16. Four months later, on October 23, 2025, Debtors claimed "The Debtors have made substantial progress with preparation and negotiation of a joint plan of reorganization and have been diligently pursuing reorganization. The Debtors' joint plan and disclosure statement have been fully drafted, and the Debtors are currently finalizing their projections." DOC 229, p. 4:16-19.

Yet what has materialized after 240 days? No plan summary. No projections. No disclosure statement. Only repeated assurances of imminent completion, separated by months of inactivity. Most critically, no proof of negotiations with Renzulli. Without this foundational evidence, Debtors cannot meet their burden for this second element.

### 3. The existence of good faith progress towards reorganization

Debtors argued, without evidence, that they've made good faith progress.

> The Debtors have made good faith progress in moving toward reorganization. As evidenced by the dockets in the two bankruptcy cases, the Debtors' cases have been very active. Such activity has included the Debtor timely filing their schedules, appearing at their 341(a) meetings, filing their monthly operating reports, filing their periodic reports on related entities, seeking the employment of professionals, and obtaining the joint administration of the two cases. In addition, the Debtors have responded to Renzulli's repeated attempts to interfere with the Debtors' administration of their bankruptcy cases, including several motions for relief from

Judgment Creditor Renzulli Properties LLC's Opposition to Debtors' Amended Second Motion To Extend Exclusivity Periods To File a Chapter 11 Plan of Reorganization and Solicit Acceptances

stay and a motion to appoint a trustee or examiner or dismiss or convert the Debtors' bankruptcy cases.

DOC 229, p. 12:3-10.

Let's be clear about what Debtors are saying: it's Renzulli's fault we haven't finished our plan. This doesn't hold up.

Completing a plan is a unilateral act. Debtors don't need Renzulli's permission to draft plan provisions, calculate projected distributions, or prepare disclosure documents. These tasks are exclusively theirs under the Bankruptcy Code. Blaming Renzulli for Debtors' failure to complete work only they can do makes no logical sense.

True, Renzulli filed motions. True, this Court granted stay relief and appointed an examiner. But why did the Court appoint an examiner? To investigate $7,100,000 in funds transferred from TPC on July 3, 2024, because Debtors weren't making any effort to recover those funds for creditors. The examiner is a response to Debtors' failure, not evidence of Renzulli's obstruction.

What Debtors don't mention is equally important: their motion contains no reference to recovering more than $4,800,000 that could pay creditors. Debtors complain about delays caused by others while ignoring nearly $5 million they could pursue for the benefit of the estate. This tells you everything about where the real problem lies.

### 4. The fact that debtor is paying its bills as they come due

On November 4, 2025, the San Diego County Tax Assessor filed claim 12, for $9,910.68. The first payment of Debtor's real estate taxes on 945 E. J St. were due on November 1, 2025. TPC has no cash to pay the real estate taxes.

Renzulli proved that Debtors are not paying their debts because six of Mr. Phair's entities were suspended by the California Secretary of State after Mr. Phair filed for bankruptcy because those entities had not filed tax returns or paid taxes. DOC 137-1, Exhs. 1, 3-6, and 10.

The US Trustee instructed Mr. Phair to obtain fire insurance on 945 E. J St. and

Mr. Phair resisted obtaining insurance. Debtors only obtained insurance on 945 E. J St. in response to Renzulli's motion to appoint a trustee or examiner, or convert the case to Chapter 7. We know of the unpaid taxes and suspended entities above. We do not know how many other new claims Debtors have left unpaid.

### 5. Whether the debtor has demonstrated reasonable prospects for filing a viable plan

Debtor TPC has no reasonable prospects for a viable plan because it has no real property, no cash and no business opportunities. With less than $24,000 in assets, TPC has not met its burden to show that it has a viable plan. The Court should separate the parties for consideration of whether both TPC and Mr. Phair have met their burdens.

Debtor Mr. Phair told us that his sole real estate project, Bella Mar, fell apart with the buyers and investors.

Debtor Mr. Phair told us that the Bella Mar project would take at least 15 months, but put no date certain when Bella Mar will have cash to pay creditors. DOC 187, p. 9:10.

Mr. Phair initially claimed that his interest in Bella Mar was worth $11,250,000. Case 25-00661, DOC 12, p. 6. Now Mr. Phair claims it is worth $8,250,000 at some unknown time in the future when the property goes from affordable housing apartments to town homes, and is approved for grading permits. During this bankruptcy, Mr. Phair has lost $3,000,000 on one project.

### 6. Whether the debtor has made progress in negotiations with its creditors

As listed above, Renzulli is the largest secured creditor and Debtors made no claim to have had any conversation with Renzulli. This factor weighs in favor of denying the motion.

### 7. The amount of time which has elapsed in the case

The statute permits exclusivity extensions up to 18 months for a reason: to accommodate genuinely complex reorganizations. Consider what that maximum

Judgment Creditor Renzulli Properties LLC's Opposition to Debtors' Amended Second Motion To Extend Exclusivity Periods To File a Chapter 11 Plan of Reorganization and Solicit Acceptances

contemplates—retailers with hundreds of locations negotiating lease rejections; manufacturers unwinding international supply chains; healthcare systems coordinating with regulators across multiple states. These are cases where billions of dollars and thousands of jobs hang in the balance.

Now consider this case. TPC's remaining assets total less than $24,000 after the scheduled Sheriff's sale of 945 E. J St.

Mr. Phair's entire reorganization hinges on a single property: Bella Mar. Mr. Phair estimates that his future interest in Bella Mar will sell for $8,250,000, but concedes it is not yet ready for market. When will it be ready? Mr. Phair, despite claiming 40 years in real estate development, cannot say.

This is not complexity. This is either incompetence or evasion. An experienced developer knows how to build a timeline, even with contingencies to show when the property will be sold and the cash in hand. That Mr. Phair offers none suggests Debtors seek maximum time not because their case requires it, but because they have no plan to complete the work. That Mr. Phair cannot provide even a rough estimate after 240 days suggests either a lack of genuine progress or a lack of genuine expertise. Neither justifies moving to the maximum statutory extension for this straightforward, single-asset case.

### 8. Whether debtor is seeking an extension of exclusivity in order to pressure creditors to submit to the debtor's reorganization demands

What would a debtor seeking to negotiate in good faith do? Engage the largest secured creditor. Present plan terms. Discuss feasibility. Identify areas of agreement and dispute. Work toward consensus.

What have Debtors done? Filed repeated extension motions without negotiating with Renzulli.

When Renzulli obtained relief from the automatic stay, Debtors sought to undo it through deadline extensions. Debtors have the support of their business associate, Mr. DeSantis, through his declaration. DOC 182.

Judgment Creditor Renzulli Properties LLC's Opposition to Debtors' Amended Second Motion To Extend Exclusivity Periods To File a Chapter 11 Plan of Reorganization and Solicit Acceptances

Debtors deployed Mr. DeSantis to sue Renzulli in the Superior Court of California, County of San Diego, case number 25CU007829C. Now Mr. DeSantis files here, and Debtors cite Mr. DeSantis's lawsuit as justification for more delay. "There is also an ongoing dispute between Renzulli and DeSantis regarding the priority of liens secured by the J Street Property that will likely further delay any sheriff's sale." DOC 229, p. 12:20-22. Not so. On February 21, 2025, Mr. DeSantis requested a temporary restraining order to prevent the sale and the Superior Court denied the request. Dec. of W. Pennington ¶ 2, Exh. 1. On October 31, 2025, the Court granted Renzulli's motion to expunge the lis pendens, granted in part Renzulli's special motion to strike under California Code of Civil Procedure section 425.16, granted Renzulli attorney's fees of $7,090 against Mr. DeSantis, and told Renzulli to file a separate motion for attorney's fees for its success on the special motion to strike. Dec. of W. Pennington ¶ 3, Exh. 2.

Mr. DeSantis has not withdrawn his lis pendens or filed a notice of expungement of his lis pendens against 945 E. J St.

Mr. Phair argued "At a foreclosure sale, the J Street Property will sell for a token amount of likely no more than $100,000 because it has no significant value until approvals by the City for an upzone to a higher density is achieved." DOC 187, p. 13:19-21. Mr. Phair has his business associates file lis pendens on his property, fails to pay real estate taxes, and fails to record a notice of reconveyance related to an extinguished debt, and then complains that a sheriff's sale will not yield fair market value.

Debtors are not using exclusivity to build consensus—they are using it to avoid consensus. By maintaining exclusive filing rights while refusing to negotiate, Debtors force Renzulli into an impossible position: accept unknown plan terms whenever Debtors choose to propose them, or continue opposing extensions indefinitely while legal fees accumulate.

The benefit to Debtors becomes clear: each extension maintains their exclusive control, each piece of collateral litigation multiplies Renzulli's costs, and each month

Judgment Creditor Renzulli Properties LLC's Opposition to Debtors' Amended Second Motion To Extend Exclusivity Periods To File a Chapter 11 Plan of Reorganization and Solicit Acceptances

of delay makes capitulation more attractive than continued resistance. Renzulli must eventually accept Debtors' plan terms—whatever they are, whenever they come—or continue indefinitely opposing extensions and defending against Debtors across multiple forums.

This is not reorganization. This is economic warfare, with exclusivity as the primary weapon. The estate does not benefit. Creditors do not benefit. Only Debtors benefit, by leveraging procedural rights to impose unsustainable costs on creditors who refuse to submit to undefined demands. The Court should deny the extension and terminate exclusivity that serves only to coerce rather than reorganize.

### 9. Whether an unresolved contingency exists.

This factor weighs in favor of granting the motion because there are unresolved contingencies.

Debtors have taken no action to resolve the contingencies. If this Court should grant the motion, it should order debtors to take action to resolve the contingencies before the end of the additional extension, and the Court should not grant any additional extensions if sufficient progress has not been made toward resolution of the contingencies.

November 5, 2025

/s/ Walt Pennington

Page **10** of **10**

Judgment Creditor Renzulli Properties LLC's Opposition to Debtors' Amended Second Motion To Extend Exclusivity Periods To File a Chapter 11 Plan of Reorganization and Solicit Acceptances